UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

───────────────────────────────────────────────────────────

Allied Medical Training, LLC                File No. 19-cv-3067 (ECT/KMM)

      Plaintiff,

v.                                          **OPINION AND ORDER**

Knowledge2SaveLives L.L.C. and Monique
Doward,

      Defendants.

───────────────────────────────────────────────────────────

Allied Medical Training seeks entry of a default judgment enjoining Defendants from infringing Allied's registered service mark "KNOWLEDGE SAVES LIVES" and awarding Allied the attorneys' fees and costs it has incurred in prosecuting this case. Allied does not seek damages or equitable monetary relief. Allied's motion will be granted.

The basic process for adjudicating a default-judgment motion is straightforward. The entry of default—which the Clerk of Court entered here on February 3, 2020 [ECF No. 11]—means that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688.1 (4th ed. & Supp. 2020) (footnotes omitted). Next, it must be determined whether the taken-as-true factual allegations of the complaint "constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (quoting *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010)). If the taken-as-true allegations of the complaint constitute a legitimate cause of action, then the propriety of

injunctive relief is determined by applying the now-familiar considerations first described in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc), and the propriety of an award of attorneys' fees and costs is judged against the standards established by the fee-shifting law relied on by the moving party, *e.g.*, *Martinizing International v. BC Cleaners, LLC*, 855 F.3d 847, 852 (8th Cir. 2017).

Start with the factual allegations of the complaint that will be taken as true. Allied "provides training to current and aspiring emergency medical responders to maintain or obtain Emergency Medical Responder (EMR) or Emergency Medical Technician (EMT) certification." Compl. ¶ 5 [ECF No.1]. Allied owns United States Service Mark Registration No. 4,954,673 for "KNOWLEDGE SAVES LIVES." *Id.* ¶ 9. Allied uses this registered mark in its "marketing, advertising, and promotion of its services." *Id.* ¶ 10. The mark appears in Allied's emails, on its website, on its instructors' and students' attire, on materials given to students and prospective students, is displayed prominently in Allied's facilities, and is used in two website domain names owned by Allied ("knowedgesaveslives.org" and "knowledgesaveslives.net") that redirect users automatically to its main website, alliedmedtraining.com. *Id.* ¶ 15. The mark is an important component of Allied's reputation and goodwill and "has come to signify the high quality of [its] services." *Id.* ¶ 19; *see also id.* ¶¶ 16–18. Defendant Doward is a former enrollee in one of Allied's training courses. *Id.* ¶ 20. She did not complete the course in which she enrolled and requested a refund. *Id.* ¶¶ 22–25. Doward did not receive the refund she requested. *Id.* ¶¶ 26–28. Doward subsequently formed and registered a business organization named "Knowledge2SaveLives L.L.C." under Minnesota law. *Id.*

Ex. 10 [ECF No. 1-10]. Defendants Doward and Knowledge2SaveLives L.L.C. use the "Knowledge2SaveLives" mark in advertising, sales, and in other business activities. *Id.* ¶¶ 31, 33. Defendants offer services "identical" to those offered by Allied under its KNOWLEDGE SAVES LIVES mark "to the same types of consumers." *Id.* ¶¶ 34–35.

These taken-as-true allegations constitute a legitimate action for the statutory claims Allied asserts in its complaint: infringement of a registered mark under the Lanham Act, 15 U.S.C. § 1114(1), Compl. ¶¶ 45–49; unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), Compl. ¶¶ 50–56; and deceptive practices under the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44, Compl. ¶¶ 57–61.[1] The Lanham Act imposes liability on "any person who . . . without the consent of the registrant . . . use[s] in commerce any reproduction . . . or colorable imitation of a registered mark in connection with the sale . . . or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). The Lanham Act also imposes liability on "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A). Under Minnesota law, "[a] person engages in a deceptive trade practice when, in the course of business, . . . the person: (1)

---

[1] Allied also asserts a claim for common law trademark infringement and unfair competition. Compl. ¶¶ 62–66. In view of the legitimate statutory claims Allied asserts under federal and state law, the legitimacy of Allied's common-law claim need not be addressed.

passes off goods or services as those of another; (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; [or] (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another." Minn. Stat § 325D.44 subd. 1(1)–(3).  As Allied alleges in its complaint and substantiates through exhibits to its motion, Defendants have been using the "Knowledge 2 Save Lives" mark in the advertising, promotion, and sale of services in the organization's email address and in flyers advertising a training class.  Compl. ¶¶ 30–33; Ewen Decl. Ex. 10 at 2 [ECF No. 15-10].  It seems obvious that Defendants' "Knowledge 2 Save Lives" mark is not merely confusingly similar to Allied's "KNOWLEDGE SAVES LIVES" mark.  It is, for all practical purposes, equivalent.  As Allied alleges, "[t]he only difference between the two marks is Defendants' addition of the number '2' between 'Knowledge' and 'Save' (and the removal of the 'S' from the end of 'Saves')."  Compl. ¶ 30.  It requires no leap—only a very rational inference—to conclude that Defendants' use of "Knowledge 2 Save Lives" would confuse consumers into thinking that Allied is the source of or is affiliated with Defendants' services.

"[A]n injunction is the preferred Lanham Act remedy," *Safeway Transit LLC v. Discount Party Bus, Inc.*, 954 F.3d 1171, 1178 (8th Cir. 2020) (quoting *Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1247 (8th Cir. 1994)), and injunctive relief is available under the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.45, subd. 1.  As noted, whether a permanent injunction should be entered as part of a default judgment requires consideration of the Eighth Circuit's *Dataphase* factors.  *See, e.g.*,

4

*Magnum Research, Inc. v. Ho Feng Indus. Co., Ltd.*, No. 03-cv-6438 (JNE/JSM), 2005 WL 8164468, at *3 (D. Minn. Aug. 30, 2005). Those factors are: "(1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest." *Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950, 956 (D. Minn. 1999) (citing *Dataphase*, 640 F.2d at 112–14). As the discussion in the preceding paragraph shows, the taken-as-true allegations in Allied's complaint establish Allied's likelihood of success on the merits. "It is unclear whether the traditional presumption of irreparable harm in trademark cases has survived more recent Supreme Court opinions emphasizing the movant's burden to show that 'irreparable injury is *likely* in the absence of an injunction.'" *Phyllis Schlafly Revocable Trust v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Regardless, the near-identity of Allied's and Defendants' marks coupled with the obvious challenges inherent in ascertaining damages from customer confusion—both in dollar value and frequency—warrant a finding of irreparable harm here. On this record, it is not possible to say that the balance of harms (between Allied's irreparable harm and the harm that an injunction would cause Defendants) tilts in Defendants' favor. Defendants aren't here to describe the harm they face. If they were, a finding that Defendants are harmed to that degree would require looking away from their plainly infringing activities. That would seem inappropriate. Finally, if the public had an interest in this lawsuit, it would appear to be less significant but favor Allied for the simple reason that the public disfavors activities

5

that are so obviously infringing.  *See Anheuser-Busch, Inc. v. Balducci Publ'ns*, 28 F.3d 769, 776 (8th Cir. 1994) (noting public interest in avoiding consumer confusion).

The Lanham Act gives courts discretion to award reasonable attorneys' fees and costs to a prevailing party in "exceptional cases."  15 U.S.C. § 1117(a).  An exceptional case involves behavior by a party that goes "beyond the pale of acceptable conduct."  *Fair Isaac Corp. v. Experian Info. Sols., Inc.*, 711 F. Supp. 2d 991, 1010 (D. Minn. 2010) (quoting *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877 (8th Cir. 1994)).  A finding of bad faith is not required for a party's conduct to be considered exceptional, but the infringement must be "malicious, fraudulent, willful, or deliberate."  *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1013 (8th Cir. 2011) (quotation omitted); *see also Martinizing Int'l*, 855 F.3d at 852 (reversing that part of default judgment awarding attorneys' fees under Lanham Act because the plaintiff "failed to prove that [the defendant's] conduct makes this the kind of exceptional case that would" justify attorney's fees award).  Here, the record justifies a fee award.  Allied has shown that Doward was motivated to retaliate and infringe deliberately because she did not receive the refund she requested.  Ewen Decl. Exs. 4, 5, 7, and 8.  Defendants continued using their infringing mark after receiving two letters from Allied asking them to stop.  *Id.* Exs. 11, 12.  Doward responded to these letters only by demanding "a million dollars for the name of my business," and describing Allied's activities as "harassment."  Ginsburg Decl. ¶ 3, Ex. B.  Together, these facts show willful, deliberate conduct by Defendants.

6

Several factors may be considered to determine a reasonable fee. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983). These include, of particular relevance here, the time and labor reasonably required and the experience of the attorney in comparison to the attorney's hourly rate. *Id.* Allied seeks an award of attorneys' fees and costs in the amount of $9,016. On the surface, that seems like a reasonable amount. *See Adventure Creative Grp., Inc. v. CVSL, Inc.*, 412 F. Supp. 3d 1065, 1073–74 (D. Minn. 2019) (awarding attorneys' fees and costs incurred in seeking default judgment in the amount of $8,369.50). Allied's submissions establishing its claim for attorneys' fees and costs raise questions. For example, no information is provided to justify the claimed hourly rates. Also, to support its claimed amount, Allied submitted a "copy of timesheets, showing the amounts billed . . . in this matter." Second Ginsburg Decl. ¶ 5, Ex. 4 [ECF No. 23]. The timesheets include two entries for work on matters that seem unrelated to this case, *id.*, Ex. 4 at 1, and it is not clear whether or to what degree the amounts billed for these entries have been included in Allied's claim or, if included, then discounted for the work done on other matters. Though Allied says "[t]he relevant time entries have been highlighted and show a total amount of attorneys' fees and costs of $8,266.50," *id.* ¶ 5, in fact, the highlighted entries total more than $10,000. The highlighted entries include time for a "KN" at a $70 hourly rate, *id.*, Ex. 4 at 11, 12, and 15, but it is not evident who this is. Finally, Allied says that "[t]here is additional time from June 15, 2020 not included in the timesheets of three hours for legal research" and other activities that "bring[] the total to $9,016, *id.* ¶ 5, an amount still below what is reflected on the timesheets. In many cases, questions like these would warrant denying a fee motion without prejudice to the movant's right to submit

7

additional materials. This does not make sense here for at least four reasons. *First*, Allied's counsel's website describes professional credentials justifying a $250 hourly rate. *See Elliot Reed Ginsburg*, Garner, Ginsburg & Johnsen, P.A., https://www.yourfranchiselawyer.com/lawyers/elliot-reed-ginsburg/ (last visited June 30, 2020). *Second*, regardless of whether or how the questions are answered concerning the timesheets, a high four-figure fee award in a case like this is reasonable. *See Adventure Creative Grp.*, 412 F. Supp. 3d at 1073–74; *Journey Grp. Cos. v. Sioux Falls Constr., LLC*, No. 16-cv-4125, 2017 WL 4466585, at **2–4 (D.S.D. Oct. 5, 2017); *Am. Auto. Ass'n, Inc. v. Advance Quotes, LLC*, No. 6:10-cv-06020, 2010 WL 2985505, at **5–6 (W.D. Ark. June 29, 2010). *Third*, excluding time entries that reflect work on other matters and time billed by "KN," the total amount still would exceed the $9,016 amount sought. *Fourth*, ordering the filing of additional materials would require the billing of additional time and increasing Allied's request for attorneys' fees. That seems counter-productive. Fed. R. Civ. P. 1. For these reasons, Allied will be awarded the attorneys' fees and costs it seeks in the requested amount of $9,016.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Plaintiff Allied Medical Training, LLC's motion for default judgment [ECF No. 12] is **GRANTED**;

2. Defendants Knowledge2SaveLives L.L.C. and Monique Doward are permanently enjoined from using the mark "KNOWLEDGE 2 SAVE

LIVES" or any mark confusingly similar to it or confusingly similar to Plaintiff's registered service mark, "KNOWLEDGE SAVES LIVES"; and

3. Defendants are liable to Plaintiff in the amount of $9,016.00 for attorneys' fees and costs.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 30, 2020
s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court